Steven S. Hansen (AK Bar No. 0911053)
CSG, Inc.
714 Fourth Avenue, Suite 200
Fairbanks, Alaska 99701
Tel: (907) 452-1855 / Fax: (907) 452-8154
stevenh@alaskalaw.com

Karen A. Doner (VA Bar No. 40999)
(*pro hac vice* application pending)
Natalie Rainforth Poteet (VA Bar No. 89862)
(*pro hac vice* application pending)
Doner Law, PLC
1750 Tysons Blvd., Suite 1500
Tysons Corner, Virginia 22102
Tel: (703) 462-5471 / Fax: (703) 462-5437
kdoner@donerlawplc.com
npoteet@donerlawplc.com

*Attorneys for Plaintiff*
K'oyitl'ots'ina, Ltd.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

# AT FAIRBANKS

| | |
|---|---|
| K'OYITL'OTS'INA, LTD., an Alaska corporation,<br><br>                Plaintiff,<br><br>v.<br><br>ROBERT GOTTSCHALK, an individual; and GLOBAL FOOD SERVICES LLC D/B/A GFS GROUP, a Limited Liability Company formed under the laws of Guam,<br><br>                Defendants. | Case No. _____ |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff K'oyitl'ots'ina, Ltd., by and through its undersigned counsel, as and for its Complaint against Defendants Robert Gottschalk and Global Food Services LLC d/b/a GFS Group, alleges and complains as follows:

## THE PARTIES

1. Plaintiff K'oyitl'ots'ina, Ltd. ("K'oyitl'ots'ina" or "Plaintiff") is a corporation formed under the laws of the state of Alaska with its principal place of business in Fairbanks, Alaska. Plaintiff is an Alaska Native-owned business and government contractor with subsidiaries, including Brooks Range Contract Services, Inc. ("BRCS"), Kcorp Technology Services, Inc. ("KTS"), Kcorp Support Services, Inc. ("KSS"), and Yukon Fire Protection Services, Inc. ("YFPS"), providing facility maintenance and other services throughout the country.[1]

2. Defendant Robert Gottschalk ("Gottschalk") is an individual who currently resides in the state of New York at 148 Blooms Corners Road, Warwick, New York 10990-2308. Gottschalk is a former employee of Plaintiff.

3. Defendant Global Food Services LLC d/b/a GFS Group ("GFS Group") is a corporation formed under the laws of the U.S. territory of Guam with its principal place of business at 415 Chalan San Antonio, Suite 305, Tamuning, Guam 96913-3620. According

---

[1] Whenever reference is made in this Complaint to Plaintiff K'oyitl'ots'ina, such allegation shall extend to its subsidiaries, as appropriate.

to its website, www.gfsgroup.com, GFS Group provides a myriad of support services, including facilities management, to the U.S. Government and others.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states, i.e., a citizen of Alaska (K'oyitl'ots'ina), and citizens of New York (Gottschalk) and Guam (GFS Group).

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial amount of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

6. Gottschalk was hired by K'oyitl'ots'ina, Ltd. ("K'oyitl'ots'ina") on June 1, 2003 as Vice President of Business Development. He resigned from K'oyitl'ots'ina in June 2006, only to return as Chief Operating Officer (COO) on January 1, 2007. On February 22, 2009, he once again became Vice President of Business Development at K'oyitl'ots'ina. Then, from January 1, 2019 until the elimination of his position (and resulting termination of employment) on June 28, 2019, Gottschalk was employed by KTS as Vice President and General Manager.

7. Prior to his hiring by K'oyitl'ots'ina, Gottschalk traveled to Alaska for an interview. He was hired by, and regularly communicated via telephone with, K'oyitl'ots'ina staff located at its headquarters in Fairbanks, Alaska. Additionally, from

the start of his employment in 2003 until 2019, Gottschalk visited Alaska approximately thirty-five (35) times to conduct business for K'oyitl'ots'ina. Gottschalk was personally involved in winning numerous contracts for K'oyitl'ots'ina (or its subsidiaries) within the state of Alaska, including at the federal courthouse in Fairbanks; at courthouses in Petersburg, Juno, and Tok; and at an Alaskan port of entry.

8. Over the course of his employment, K'oyitl'ots'ina spent a significant amount of time, money, and resources training Gottschalk. In his various roles, he acquired substantial confidential, customer-related information which was and is of critical value to K'oyitl'ots'ina. As Vice President and General Manager of KTS, Gottschalk's job duties specifically included management and oversight of contract work being performed by BRCS for the General Services Administration ("GSA") at the John F. Kennedy Federal Building (the "Kennedy Building") in Boston, Massachusetts. Gottschalk had indeed worked on BRCS' two previous bids for the GSA contract. K'oyitl'ots'ina provided Gottschalk with extensive training regarding government contracts and the bidding process.

9. At both K'oyitl'ots'ina and KTS, Gottschalk was intimately involved with, and performed services for, many if not all of Plaintiff's clients. He had access to all of K'oyitl'ots'ina's processes, systems, client lists, management techniques, technological information, and other confidential and proprietary information. K'oyitl'ots'ina depends on government contract opportunities and awards as a significant source of revenue, and Gottschalk regularly communicated and interacted with representatives of various

government entities while performing his job duties for K'oyitl'ots'ina and KTS. During his employment, Gottschalk was paid a generous annual salary, plus bonuses and full benefits.

10. On or about July 6, 2015, Gottschalk entered into a Confidentiality and Non-Solicitation Agreement with K'oyitl'ots'ina ("Non-Solicitation Agreement" or "Agreement"). A copy of the Non-Solicitation Agreement is attached hereto as **Exhibit A**. The Agreement prohibits Gottschalk from soliciting, either directly or indirectly, customers of K'oyitl'ots'ina for the purpose of providing services in competition with the company. More specifically, Paragraph 3 states, in relevant part:

> NON-SOLICITATION:
>
> . . . During Employee's employment and for a period of one (1) year thereafter, Employee shall not divert, take away, call upon, contact, induce, or otherwise solicit or attempt to solicit, or perform services for, directly or indirectly (including through another individual or entity, including a competitor of the Company), any customer of the Company, with respect to offering or providing, any services in competition with the Company (hereinafter referred to as "Competitive Services"), for whom the Employee performed services for during his/her employment with the Company. Competitive Services are defined as federal and/or commercial facilities management including project management, facilities maintenance, mechanical operations and maintenance, EMCS service and maintenance, roads and grounds maintenance, plumbing and pipefitting, and HVAC maintenance and repair.

Exh. A (Agreement, ¶ 3(a)).

11. Gottschalk had other obligations under the Agreement—namely, his commitment to not, directly or indirectly, use or disclose any of K'oyitl'ots'ina's confidential or proprietary information:

### CONFIDENTIAL AND PROPRIETARY INFORMATION:

> Employee covenants and agrees that, during Employee's employment and for an unlimited time period thereafter, any and all Confidential Information shall not, be directly or indirectly used, disseminated, disclosed or published. Confidential Information includes, without limitation, any proprietary, confidential, competitively sensitive, or nonpublic personal documents and information, constitutional documents, forms, business plans, memoranda, all methods and support systems, business processes, software, bid proposals, prices, customer contacts, customer lists, supplier lists, technical memoranda, research reports, designs and specifications, new product and service developments, trademarks or services marks, comparative analysis of competitive products, services and operating procedures and other information, data, documents, technology, knowhow, processes, trade secrets, contracts, proprietary information, historical and projected financial information, operating data and organizational and costs structures, now or hereafter existing or previously developed or acquired during the course of Employee's employment, regardless of whether any such information, data or documents qualify as 'trade secrets' under applicable law.

Exh. A (Agreement, ¶ 1).

      12.    With respect to available remedies, the Non-Solicitation Agreement specifically states:

> . . . Employee further agrees that the Company shall be entitled to temporary and permanent injunctive relief to restrain any breaches or further violations of this Agreement, without the posting of any bond, and that this right to injunctive relief shall be in addition to any and all of the Company's other remedies and damages, including but not limited to, costs and reasonable attorney's fees incurred as a result of said breach or threatened breach.

*Id.* at ¶ 4; *see also id.* at ¶ 5 ("In the event that either party breaches this Agreement the prevailing party shall be entitled to its costs, including reasonable attorney's fees, from the other party, incurred as a result of such breach.").

13. The parties selected Alaska law to govern the Non-Solicitation Agreement, without regard to choice of law provisions. *See* Exh. A (Agreement, ¶ 7).

14. On July 16, 2019, K'oyitl'ots'ina, through its counsel, sent Gottschalk, through his counsel, a copy of his Non-Solicitation Agreement and reminded him of his obligations thereunder. However, on July 17, 2019, the very next day and within a month of Gottschalk's termination from K'oyitl'ots'ina, Gottschalk attended a pre-proposal conference and site visit at the John F. Kennedy Federal Building in Boston, Massachusetts. At this conference, which was held for invited entities interested in bidding on the federal contract for Operations and Facilities Maintenance Services at the building (Solicitation Number: 47PB0019R0002), Gottschalk signed an attendance sheet purporting to represent GFS Group in a Business Development capacity.

15. As noted previously, GFS Group provides the same or similar services, including facilities management services, as those provided by K'oyitl'ots'ina, KTS, and BRCS.

16. The only reason for Gottschalk to be in attendance at the July 17, 2019 pre-proposal conference and site visit was for the purpose of preparing to bid against K'oyitl'ots'ina for the work solicited by K'oyitl'ots'ina's client, the GSA, which brings in approximately $5.5 million in revenue to K'oyitl'ots'ina annually.

17. K'oyitl'ots'ina's investigation into Gottschalk's and GFS Group's actions is ongoing. Bids on the new GSA contract were due to be submitted to the government by August 14, 2019. The contract is expected to be awarded to a bidder on or about September 27, 2019.

18. On July 23, 2019, K'oyitl'ots'ina's counsel sent a cease and desist notice to Gottschalk's counsel advising that Gottschalk's attempt to solicit business from the company's customer(s) constitutes an infringement on his promise not to engage in indirect competition. K'oyitl'ots'ina demanded that Gottschalk cease performing business development on behalf of, or in association with, GFS Group (or any other entity covered by the Agreement). In light of the fact that it would be impossible for Gottschalk to assist in preparation of a bid on behalf of GFS Group without using K'oyitl'ots'ina's Confidential Information, Plaintiff also demanded that Gottschalk cease and desist in the use and/or disclosure of such information in violation of that portion of the Non-Solicitation Agreement.

19. On July 23, 2019, K'oyitl'ots'ina sent a cease and desist notice to GFS Group advising it that its employment or engagement of Gottschalk tortiously interfered with K'oyitl'ots'ina's rights and Gottschalk's obligations under the Agreement.

20. K'oyitl'ots'ina subsequently learned that on July 1, 2019, Gottschalk had gone into a Verizon store and, without permission, had his K'oyitl'ots'ina work phone number transferred to his own personal account. This unauthorized act is further evidence of Gottschalk's intent to solicit and divert K'oyitl'ots'ina's business to himself and/or a

third party, such as GFS Group. On July 29, 2019, K'oyitl'ots'ina sent a letter demanding that Gottschalk immediately transfer back the company's phone number. According to Gottschalk's counsel, he "surrendered" the phone number on August 5, 2019.

21. Notwithstanding, at 10:28 p.m. on the same day (August 5, 2019), Gottschalk, without authority, unlawfully entered the company's email system to forward to his personal email address a message that was clearly intended for Plaintiff. Attached to the email was, among other things, a Request for Final Proposal Revisions from the GSA, an agency of the United States. K'oyitl'ots'ina is still investigating other items potentially accessed and forwarded unlawfully by Gottschalk.

22. On or about August 9, 2019, K'oyitl'ots'ina delivered Gottschalk's company laptop to its IT vendor, AlasConnect LLC ("AlasConnect"), for the purpose of having a forensic copy made. AlasConnect determined that there was no user data on the device and that a brand new operating system had been installed using the "factory reset" option in Windows. On information and belief, Gottschalk, deliberately and with the intent to make certain information unavailable to K'oyitl'ots'ina, caused the installation of the new operating system to occur. Due to his actions, none of the data on the laptop could be recovered or restored.

23. To date, GFS Group has not responded to K'oyitl'ots'ina's cease and desist notice. Gottschalk, through counsel, has sent multiple letters denying that he is bound by any restrictive covenant(s) whatsoever. Gottschalk has denied forming any business entity, stating further that "he adopted the 'GFS' initials in expectation of forming an entity that

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF  *K'oyitl'ots'ina, Ltd. v. Gottschalk, et al.*
Page 9 of 20

Case 4:19-cv-00030-HRH   Document 1   Filed 09/12/19   Page 9 of 20

he would call Gottschalk Federal Services." Upon information and belief, however, "GFS Group" does indeed refer to Defendant GFS Group.

24. K'oyitl'ots'ina keeps it's proprietary information and trade secrets under lock and key, requiring security devices to access its buildings and sophisticated passwords to log into computers containing the trade secrets. It also requires all employees with access to confidential information, such as Gottschalk, to sign confidentiality agreements for the protection of just this type of data. The actions of Defendants violated the principal purpose of such agreements, which is to allow K'oyitl'ots'ina to protect its business interests, including its assets and goodwill. *See* Exh. A, at p. 1.

### COUNT I – BREACH OF CONTRACT
### (AGAINST DEFENDANT GOTTSCHALK)

25. K'oyitl'ots'ina restates and realleges paragraphs 1 through 24.

26. The Non-Solicitation Agreement is a valid and enforceable contract. *See, e.g.*, *Metcalfe Investments, Inc. v. Garrison*, 919 P.2d 1356, 1361 (Alaska 1996).

27. Gottschalk's employment at, or engagement by, GFS Group for the purpose of soliciting from the GSA, a K'oyitl'ots'ina client, contract work involving services that are the same as those offered by K'oyitl'ots'ina (including KTS) constitutes a breach of the Non-Solicitation Agreement. Likewise, Gottschalk's unauthorized use and/or disclosure of Confidential Information constitutes a breach of the Non-Solicitation Agreement.

28. As a result of Gottschalk's breaches of the Non-Solicitation Agreement, K'oyitl'ots'ina has suffered and will continue to suffer damages.

29. Pursuant to Paragraphs 4 and 5 of the Non-Solicitation Agreement, K'oyitl'ots'ina is entitled to reimbursement of its costs and attorneys' fees incurred as a result of Gottschalk's breach of the Agreement.

30. Also pursuant to Section 4 of the Non-Solicitation Agreement, K'oyitl'ots'ina is entitled to "temporary and permanent injunctive relief to restrain any breaches or further violations of this Agreement." *See* Exh. A, at ¶ 4.

31. Absent injunctive relief, K'oyitl'ots'ina will suffer irreparable harm as a result of Gottschalk's continuing breaches of the Non-Solicitation Agreement, for which there is no adequate remedy at law.

WHEREFORE, K'oyitl'ots'ina prays for the relief set forth below.

## COUNT II – TORTIOUS INTERFERENCE WITH AN EXISTING CONTRACT
**(AGAINST DEFENDANT GFS GROUP)**

32. K'oyitl'ots'ina restates and realleges paragraphs 1 through 31.

33. GFS Group is aware of the valid and enforceable Agreement between Gottschalk and K'oyitl'ots'ina, and GFS Group's employment or engagement of Gottschalk, to the extent he is soliciting K'oyitl'ots'ina's clients and/or using or disclosing its Confidential Information, constitutes intentional and willful tortious interference with Gottschalk's obligations, and Plaintiff's rights, under the Non-Solicitation Agreement.

34. GFS Group's conduct was intended to induce Gottschalk to breach the Agreement and was and is calculated to cause damage to K'oyitl'ots'ina. Without privilege or justification, GFS Group has acted with the unlawful purpose of causing such damage.

35. As a result of GFS Group's conduct, Gottschalk has breached the Agreement and K'oyitl'ots'ina has suffered and will continue to suffer damages.

36. GFS Group's conduct constitutes willful misconduct, malice, fraud, wantonness, oppression, and/or such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of K'oyitl'ots'ina. Therefore, K'oyitl'ots'ina is entitled to an award of punitive damages.

37. Absent injunctive relief, K'oyitl'ots'ina will suffer irreparable harm as a result of GFS Group's continuing tortious interference with the Non-Solicitation Agreement, for which there is no adequate remedy at law.

WHEREFORE, K'oyitl'ots'ina prays for the relief set forth below.

## COUNT III – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (AGAINST BOTH DEFENDANTS)

38. K'oyitl'ots'ina restates and realleges paragraphs 1 through 37.

39. K'oyitl'ots'ina desired to, and did, bid on the federal contract with the GSA for Operations and Facilities Maintenance Services at the John F. Kennedy Federal Building (Solicitation Number: 47PB0019R0002). K'oyitl'ots'ina, through BRCS, was fully capable of performing the work thereunder. Defendants knew about K'oyitl'ots'ina's prior business relationship with the GSA, and knew that K'oyitl'ots'ina was seeking to secure the new contract.

40. Gottschalk's deliberate attempts to solicit, on behalf of and at the direction of GFS Group, from the GSA contract work involving services that are the same as those

offered by K'oyitl'ots'ina and BRCS constitutes willful and intentional interference with K'oyitl'ots'ina's prospective business relationship with the GSA. More specifically, Defendants intentionally interfered with Plaintiff's business expectancies when, among other things:

      a.      Gottschalk and GFS Group attended the pre-proposal conference and site visit at the John F. Kennedy Federal Building on July 17, 2019; and

      b.      Gottschalk, on behalf of and at the direction of GFS Group, used and/or disclosed K'oyitl'ots'ina's Confidential Information in the course of soliciting or doing business with or for the GSA.

41.      Defendants intended to prevent K'oyitl'ots'ina from securing the contract, or at the very least believed that disruption of the potential business relationship was substantially certain to follow from their actions. Their actions were calculated to cause damage to K'oyitl'ots'ina and are/were being done with the unlawful purpose of causing such damage, without privilege or justification.

42.      As a result of Defendants' conduct, K'oyitl'ots'ina has suffered and will continue to suffer damages.

43.      Defendants' conduct constitutes willful misconduct, malice, fraud, wantonness, oppression, and/or such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of K'oyitl'ots'ina. Therefore, K'oyitl'ots'ina is entitled to an award of punitive damages.

44. Absent injunctive relief, K'oyitl'ots'ina will suffer irreparable harm as a result of Defendants' continuing tortious interference with its business relationship with the GSA, for which there is no adequate remedy at law.

WHEREFORE, K'oyitl'ots'ina prays for the relief set forth below.

### COUNT IV – MISAPPROPRIATION OF TRADE SECRETS UNDER ALASKA STAT. § 45.50.940
### (AGAINST BOTH DEFENDANTS)

45. K'oyitl'ots'ina restates and realleges paragraphs 1 through 44.

46. K'oyitl'ots'ina's customer lists, employee lists, pricing information, and other confidential and proprietary information known or possessed by Defendant Gottschalk and provided by him to GFS Group constitute trade secrets.

47. K'oyitl'ots'ina has undertaken reasonable efforts to maintain the secrecy of such trade secrets, which have significant value to the company.

48. On information and belief, Gottschalk unlawfully copied or transferred these confidential company trade secrets from his K'oyitl'ots'ina laptop for his own personal use and for GFS Group, before intentionally wiping away all traces of his actions by installing a new operating system. Defendant did so knowing or having reason to know that he was obligated to maintain the secrecy of such information. Likewise, GFS Group, knowing or having reason to know that the information furnished by Gottschalk constituted K'oyitl'ots'ina's trade secret(s) and that it was acquired by improper means, has unlawfully used this information to its benefit.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF *K'oyitl'ots'ina, Ltd. v. Gottschalk, et al.*
Page 14 of 20

Case 4:19-cv-00030-HRH   Document 1   Filed 09/12/19   Page 14 of 20

49. As a direct and proximate result of Defendants' misappropriation of K'oyitl'ots'ina's trade secrets, K'oyitl'ots'ina has suffered and will continue to suffer damages.

50. Defendants' misappropriation of K'oyitl'ots'ina's trade secrets was willful and malicious, and Plaintiff is therefore entitled to an award of exemplary damages.

51. Pursuant to the Alaska Uniform Trade Secrets Act, Alaska Stat. §§ 45.50.910 through 45.50.945, K'oyitl'ots'ina is entitled to seek, and does seek, injunctive relief to restrain actual or threatened misappropriation of trade secrets. ALASKA STAT. § 45.50.910(a). Absent injunctive relief, K'oyitl'ots'ina will suffer irreparable harm as a result of Defendants' continuing misappropriation, for which there is no adequate remedy at law.

## COUNT V – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030 (AGAINST DEFENDANT GOTTSCHALK)

52. K'oyitl'ots'ina restates and realleges paragraphs 1 through 51.

53. Gottschalk knowingly and intentionally gained access to K'oyitl'ots'ina's e-mail system without K'oyitl'ots'ina's authorization. In doing so, Gottschalk obtained information of the GSA, an agency of the United States government.

54. By gaining access to K'oyitl'ots'ina's e-mail system, Gottschalk obtained access to computers and servers owned and administered by K'oyitl'ots'ina or on its behalf.

55. The computers and servers hosted by K'oyitl'ots'ina or on its behalf are used in and affect interstate commerce.

56. The computers and servers hosted by K'oyitl'ots'ina or on its behalf constitute protected computers.

57. Gottschalk obtained unauthorized access to or exceeded his authorized access to the K'oyitl'ots'ina's protected computers when he gained access to its e-mail system.

58. Gottschalk knowingly and with intent to commit fraud obtained unauthorized access, or exceeded his authorized access, to K'oyitl'ots'ina's protected computers when he gained access to K'oyitl'ots'ina's e-mail system. In doing so, Gottschalk obtained value in the information and documents he viewed and forwarded himself, which may well be used in the furtherance of his own business endeavors. Gottschalk also obtained other value not yet determined by Plaintiff.

59. Every time Gottschalk obtained access to K'oyitl'ots'ina's e-mail system, any information contained therein, or any accounts associated therewith, he furthered his fraud.

60. Gottschalk intended to harm K'oyitl'ots'ina by engaging in the conduct described in this Count V.

61. By engaging in the conduct alleged in this Count V, Gottschalk violated the Computer Fraud and Abuse Act ("CFAA"), particularly 18 U.S.C. § 1030, subdivisions (a)(2)(B), (a)(2)(C), (a)(4), and (a)(5)(C).

62. As a direct and proximate result of Gottschalk's conduct described in this Count V and violation of the CFAA, K'oyitl'ots'ina has suffered losses aggregating to

more than $5,000 including, but not limited to, the costs of responding to the foregoing violations of Plaintiff's rights in the form of Information Technology ("IT") costs and attorneys' fees. Gottschalk has further caused impairment to the integrity or availability of data, programs, systems, and information by overwriting the data on his company laptop, rendering it irretrievable.

### COUNT VI – VIOLATION OF STORED COMMUNICATIONS ACT
### 18 U.S.C. § 2701 *et seq.*
### (AGAINST DEFENDANT GOTTSCHALK)

63. K'oyitl'ots'ina restates and realleges paragraphs 1 through 62.

64. Gottschalk knowingly and/or intentionally accessed without authorization facilities through which electronic communication services are provided to K'oyitl'ots'ina.

65. Alternatively, Gottschalk knowingly and/or intentionally exceeded his authorized access to the facilities through which electronic communication services are provided to K'oyitl'ots'ina.

66. Gottschalk acted willfully and/or intentionally.

67. By engaging in the conduct alleged in this Count VI, Gottschalk violated the Stored Communications Act ("SCA"), specifically 18 U.S.C. § 2701(a).

68. As a direct and proximate result of Gottschalk's conduct described in this Count VI and violation of the SCA, K'oyitl'ots'ina has suffered and continues to suffer injuries, harm, and damages that include, but are not limited to, violation of its statutory

rights, invasion of its privacy, harmed goodwill, and the costs and expenses of pursuing its remedies.

69. K'oyitl'ots'ina also has suffered and continues to suffer irreparable injury for which it has no adequate remedy at law.

* * *

WHEREFORE, K'oyitl'ots'ina prays for the following relief:

A. Injunctive relief:

    i. Enjoining Gottschalk from further breaches of his obligations under the Non-Solicitation Agreement;

    ii. Enjoining Defendants, for a period of one (1) year, from further unlawfully interfering with K'oyitl'ots'ina's potential contract with the GSA by submitting a bid for the contract at the John F. Kennedy Federal Building (Solicitation Number: 47PB0019R0002), or for soliciting work from any other client of K'oyitl'ots'ina (including clients of its subsidiaries) for whom Gottschalk performed services during his employment;

    iii. Enjoining Defendants from further misappropriation of K'oyitl'ots'ina's trade secrets, including use of its customer and employee lists and pricing information;

    iv. Compelling Gottschalk to surrender all computers, laptops, smartphones, and similar devices in his possession, for inspection and

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF      *K'oyitl'ots'ina, Ltd. v. Gottschalk, et al.*
Page 18 of 20

Case 4:19-cv-00030-HRH    Document 1    Filed 09/12/19    Page 18 of 20

removal of all communications intended for K'oyitl'ots'ina, and any other content obtained through K'oyitl'ots'ina's e-mail system;

    v. Permanently enjoining Gottschalk from accessing K'oyitl'ots'ina's protected computers and email system in the future;

    vi. Permanently enjoining Gottschalk from accessing or attempting to access stored communications of K'oyitl'ots'ina from any account; and

    vii. Permanently enjoining Gottschalk from using a third party to engage in any of the foregoing conduct.

B. Compensatory damages in an amount to be determined at trial exceeding $75,000, exclusive of interests and costs;

C. Lost profits;

D. Punitive and exemplary damages;

E. Reasonable attorneys' fees and costs incurred in bringing and maintaining this action;

F. Prejudgment interest; and

G. Such other and further relief that the Court deems just and proper.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF    *K'oyitl'ots'ina, Ltd. v. Gottschalk, et al.*
Page 19 of 20

Case 4:19-cv-00030-HRH   Document 1   Filed 09/12/19   Page 19 of 20

Respectfully submitted,

**K'OYITL'OTS'INA, LTD.**

    /s/ Steven S. Hansen
Steven S. Hansen (AK Bar No. 0911053)
CSG, Inc.
714 Fourth Avenue, Suite 200
Fairbanks, Alaska 99701
Tel: (907) 452-1855 / Fax: (907) 452-8154
stevenh@alaskalaw.com

Karen A. Doner (VA Bar No. 40999)
(*pro hac vice* application pending)
Natalie Rainforth Poteet (VA Bar No. 89862)
(*pro hac vice* application pending)
Doner Law, PLC
1750 Tysons Blvd., Suite 1500
Tysons Corner, Virginia 22102
Tel: (703) 462-5471 / Fax: (703) 462-5437
kdoner@donerlawplc.com
npoteet@donerlawplc.com

*Attorneys for Plaintiff*