IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

K'OYITL'OTS'INA, LTD., an Alaska Corporation,

                Plaintiff,

vs.

ROBERT GOTTSCHALK, an individual; and GLOBAL FOOD SERVICES LLC D/B/A GFS GROUP, a Limited Liability Company formed under the law of Guam,

                Defendants.

No. 4:19-cv-0030-HRH

## O R D E R

### Motion to Dismiss or, in the Alternative, Motion to Transfer Venue

Defendant Robert Gottschalk moves to dismiss this case for improper venue or, the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a).[1] This motion is opposed by plaintiff K'oyitl'ots'ina, Ltd.[2] Oral argument has not been requested and is not deemed necessary.

---

[1] Docket No. 20.

[2] Docket No. 31.

Background

Plaintiff "is a 100% Alaska Native-owned corporation providing professional facilities management and construction services to both private industry clients and the United States federal government."[3] Plaintiff alleges that "its principal place of business [is] in Fairbanks, Alaska."[4]

Defendant is a former employee of plaintiff. Defendant was employed by plaintiff from 2003 through 2019, with a brief break in employment in 2006.[5] At the time of his termination on June 28, 2019, defendant avers he was Vice President of Business Development.[6] Defendant avers that his "job consisted primarily of obtaining and managing business contacts for [p]laintiff, as well as oversight of [p]laintiff's business operations."[7] Throughout his employment with plaintiff, defendant lived in New York state and he avers that he "worked primarily from my home office in New York."[8]

---

[3]Declaration of Howard Anastasi [etc.] at 1, ¶ 3, Docket No. 32.

[4]Complaint for Damages and Injunctive Relief at 2, ¶ 1, Docket No. 1.

[5]Declaration of Robert Gottschalk at 1, ¶ 1, Docket No. 22; Anastasi Declaration at 4, ¶ 7, Docket No. 32.

[6]Gottschalk Declaration at 2, ¶ 2, Docket No. 22. Plaintiff contends that at the time of his termination, defendant was Vice President and General Manager for KTS, one of plaintiff's subsidiaries. Anastasi Declaration at 2, ¶ 5, Docket No. 32.

[7]Gottschalk Declaration at 2, ¶ 2, Docket No. 22.

[8]Id. at 2, ¶¶ 3-4.

Howard Anastasi, plaintiff's Vice President of Human Resources, avers that during defendant's employment, defendant "regularly communicated via telephone with [plaintiff's] staff . . . in Fairbanks, Alaska."[9] Defendant avers, however, that in 2009, the senior management of plaintiff "relocated from Alaska to Scottsdale, Arizona[,]" including his supervisor at the time, Mr. Quinlan.[10] Thus, defendant avers that after 2009, he communicated with Mr. Quinlan in Arizona "frequently via telephone and email."[11]

On July 6, 2015, plaintiff and defendant entered into a Confidentiality and Non-Solicitation Agreement.[12] The Agreement was signed on behalf of plaintiff in Fairbanks[13] and by defendant in New York.[14] Defendant avers that "[t]here were no negotiations over this [Agreement]; rather it was presented to me on a 'take or leave it' basis."[15] One of the terms of the Agreement was that "for a period of one (1) year" after defendant's employment with plaintiff terminated, he would

> not divert, take away, call upon, contact, induce, or otherwise solicit or attempt to solicit, or perform services for, directly or

---

[9] Anastasi Declaration at 3, ¶ 8, Docket No. 32.

[10] Declaration of Robert Gottschalk in Support of Reply in Support of Defendant's Motion to Dismiss [etc.] at 2, ¶¶ 2, 6, Docket No. 35.

[11] Id. at 3, ¶ 6.

[12] Exhibit A, Anastasi Declaration, Docket No. 32.

[13] Anastasi Declaration at 2-3, ¶ 6, Docket No. 32.

[14] Gottschalk Reply Declaration at 3, ¶ 7, Docket No. 35.

[15] Id.

-3-

>indirectly . . . any customer of the Company, with respect to offering or providing, any services in competition with the Company, . . . for whom [he] performed services for during his[] employment with the Company.[16]

The Agreement also provided that "for an unlimited time period" after defendant's employment terminated, "all Confidential Information shall not, be directly or indirectly used, disseminated, disclosed or published."[17]

While employed by plaintiff, defendant's duties included "the management and oversight of contract work being performed" by one of plaintiff's subsidiaries at the Kennedy Building in Boston, Massachusetts.[18] Plaintiff's contract for the work at the Kennedy Building "expires at the end of 2019."[19]

On July 17, 2019, defendant "attended a pre-proposal conference and site visit at the Kennedy Building" for entities interested in bidding on a new "Operations and Facilities Maintenance Services" contract.[20] Defendant signed in as representing "GFS Group" and listed his position as "Business Dev."[21] Plaintiff alleges that "the only reason for [defendant]

---

[16] Confidentiality and Non-Solicitation Agreement at ¶ 3(a), Exhibit A, Anastasi Declaration, Docket No. 32.

[17] Id. at ¶ 1.

[18] Anastasi Declaration at 4-5, ¶ 13, Docket No. 32.

[19] Id. at 6-7, ¶ 19.

[20] Id. at 7, ¶ 18.

[21] Exhibit C at 2, Anastasi Declaration, Docket No. 32.

to be in attendance at the July 17, 2019 pre-proposal conference and site visit was for the purpose of preparing a bid against [plaintiff] for the work solicited by [plaintiff's] client, the GSA[.]"[22] "In September 2019, [plaintiff] learned that it had not been awarded the" new Kennedy Building contract.[23]

In addition to his attendance at the pre-proposal conference in Boston, plaintiff alleges that defendant engaged in other conduct that suggests that he was violating the Confidentiality and Non-Solicitation Agreement and tortiously interfering with plaintiff's Kennedy Building contract.[24] Anastasi avers that on July 1, 2019, defendant went "into a Verizon store . . . and without the Company's permission, had his K'oyitl'ots'ina work phone number transferred from the Company to his own personal account."[25] And, Anastasi avers that on August 5, 2019, defendant "somehow . . . gained unauthorized entry to his former K'oyitl'ots'ina email account and forwarded a message to his personal email."[26]

Plaintiff commenced this action on September 12, 2019. In its complaint, plaintiff asserts the following claims against defendant: 1) breach of contract, 2) tortious interference with prospective economic advantage, 3) state law misappropriation of trade secrets, 4)

---

[22]Complaint for Damages and Injunctive Relief at 7, ¶ 16, Docket No. 32.

[23]Anastasi Declaration at 7, ¶ 20, Docket No. 32.

[24]Complaint for Damages and Injunctive Relief at 8-9, ¶¶ 20-21, Docket No. 1.

[25]Anastasi Declaration at 7, ¶ 22, Docket No. 32.

[26]Id.

violation of the Computer Fraud and Abuse Act, and 5) violation of the Stored Communications Act.

Pursuant to Rule 12(b)(3), Federal Rules of Civil Procedure, defendant now moves to dismiss plaintiff's complaint for improper venue. In the alternative, pursuant to 28 U.S.C. § 1404(a), defendant moves to transfer this case to the United States District Court for the Southern District of New York or to the United States District Court for Massachusetts.

Discussion

"Pursuant to Rule 12(b)(3), a party may move to dismiss an action for improper venue." Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc., 265 F. Supp. 3d 1196, 1200 (D. Or. 2017). "Analysis under Rule 12(b)(3) . . . permits the district court to consider facts outside of the pleadings[.]" Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). "[D]isputed facts must be viewed in the light most favorable to the non-moving party." Masterson v. Swan Range Log Homes, LLC, Case No. 06–CV–163–S–EJL, 2007 WL 625387, at *2 (D. Idaho Feb. 23, 2007).

"Once venue is challenged, the plaintiff bears the burden of showing that venue is proper." Synoptek, LLC v. Synaptek Corp., 326 F. Supp. 3d 976, 986 (C.D. Cal. 2017) (citing Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979)). "A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2). Section "1391(b)(2) contemplates that there may be more than one district in which a substantial part

of the events giving rise to the claim occurred[.]" Rodriguez v. California Highway Patrol, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000) (citation omitted). "Section 1391(b)(2) does not require that a majority of the events have occurred in the district where suit is filed, nor does it require that the events in that district predominate." Id.

Plaintiff alleges that "a substantial amount of the events or omissions giving rise to the claim[s]" against defendant "occurred in" the District of Alaska.[27] "To determine whether a substantial part of the events giving rise to the claim occurred in the forum, the court first considers what acts or omissions by the defendants give rise to the plaintiffs' claims." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1189 (N.D. Cal. 2017) (citation omitted). "After identif[ying] the alleged wrongful acts, the court must determine whether a substantial part of those acts took place in the forum." Id. (citation omitted).

"When the plaintiff asserts multiple claims, it must establish that venue is proper as to each claim." Kaia Foods, Inc. v. Bellafiore, 70 F. Supp. 3d 1178, 1183 (N.D. Cal. 2014). "However, where venue exists for the principal claim, federal courts will also adjudicate closely related claims, even if there is no independent source of venue for the related claims." Id.

A principal claim in this case is plaintiff's breach of contract claim. In contract cases, in determining where a substantial part of the events took place, courts look to "the locations where negotiations and execution of the contract occurred, the place where the contract was

---

[27]Complaint for Damages and Injunctive Relief at 3, ¶ 5, Docket No. 1.

intended to be performed, and the place where the alleged breach occurred." Masterson, 2007 WL 625387, at *3. Courts also look to "the location of injury to the plaintiff." Por Vida Productions, LLC v. Harrison, Case No. CV 11–1944 AHM (JCx), 2012 WL 13008416, at *7 (C.D. Cal. March 19, 2012).

Here, the contract alleged to have been breached was the Confidentiality and Non-Solicitation Agreement.[28] There were no negotiations leading up to the signing of this Agreement and defendant signed the Agreement in New York. While plaintiff signed the Agreement in Alaska, in considering where a substantial part of the events giving rise to plaintiff's breach of contract claim occurred, the court focuses more on the acts of defendant and less on the acts of plaintiff. The contract was intended to be performed wherever defendant was as it governed his conduct, and at all relevant times, defendant was in New York or Massachusetts. As for the alleged breaches, one alleged breach, defendant's attendance at the pre-proposal conference and site visit, occurred in Massachusetts. Plaintiff's breach of contract claim is also based on allegations that he copied or transferred plaintiff's trade secrets (such as client lists and pricing information) from his Company laptop, he had his personal phone number changed to his previous work phone number, and he accessed his prior work email account without authorization. All of this conduct occurred somewhere other than Alaska.

---

[28]Plaintiff has presented a number of facts related to its Kennedy Building contract, but that is not the contract that was allegedly breached.

Plaintiff makes much of the fact that the loss of the Kennedy Building contract was felt in Alaska. But, "case law does not support the theory that venue is proper on an economic-effects inquiry alone[.]" Astor Holdings, Inc. v. Roski, No. 01 CIV.1905 (GEL), 2002 WL 72936, at *9 (S.D.N.Y. Jan. 17, 2002). "A plaintiff's economic harm felt in the original forum is not sufficient for a finding of proper venue under Section 1391(b)(2)." Allstate Life Ins. Co. v. Stanley W. Burns, Inc., 80 F. Supp. 3d 870, 879 (N.D. Ill. 2015). That the alleged harm from defendant's alleged breaches may have been felt in Alaska does not mean that venue as to plaintiff's breach of contract claim is proper in Alaska.

Such a result is not inconsistent with Samson Tug & Barge Co. v. Koziol, 869 F. Supp. 2d 1001 (D. Alaska 2012), a case relied on by plaintiff. There, the court found that venue was appropriate in Alaska, in part, because the economic injury caused by the breach of contract was felt in Alaska. Id. at 1016. But, "there were additional events connected with Alaska that gave rise" to the breach of contract claim, "perhaps most notably the fact that the underlying debt arose from the shipment of materials out of Alaska." Id. at 1016-17. Here, the only event connected with Alaska that gave rise to plaintiff's breach of contract claim other than the alleged harm being felt in Alaska was that plaintiff signed the Agreement in Alaska. All the other events took place either in Massachusetts or New York. Because a substantial amount of the events giving rise to plaintiff's breach of contract claim did not occur in Alaska, venue in Alaska is not proper for this claim.

Plaintiff has also asserted a tortious interference with prospective economic advantage claim against defendant. "'In tort cases, courts tend to focus on where the allegedly tortious actions took place <u>and</u> where the harms were felt' when considering whether a substantial part of the events or omissions giving rise to the claim did or did not occur in the forum district." <u>Service Women's Action Network v. Mattis</u>, 320 F. Supp. 3d 1082, 1088 (N.D. Cal. 2018) (quoting Wright & Miller, <u>14D Fed. Prac. & Proc. Juris.</u> § 3806 (4th ed.)). The tortious interference claim is based on allegations that defendant attended the pre-conference and site visit and that he disclosed plaintiff's trade secrets in "the course of soliciting or doing business with or for the GSA."[29] These alleged tortious actions by defendant took place in Massachusetts and perhaps New York. While the alleged harm caused by defendant's alleged actions may have been felt in Alaska, as another court has explained,

> [v]enue will usually exist where an act outside the district causes physical injury or other tortious effect inside the district. If, for example, a defendant by actions in California interfered with a business opportunity that existed in New York, the harm which the tort contemplates would occur here. But if the economic loss that resulted was inflicted on a corporation in Georgia, for example, that alone would not be sufficient for venue in Georgia, else plaintiffs could always sue in their home forum.

<u>Astor Holdings, Inc.</u>, 2002 WL 72936, at *8. Thus, it is not sufficient for venue purposes that the alleged harm from defendant's alleged tortious interference was felt in Alaska. Venue in Alaska is not proper for plaintiff's tortious interference claim.

---

[29]Complaint for Damages and Injunctive Relief at 13, ¶ 40b, Docket No. 1.

Finally, plaintiff has asserted three statutory claims, one under state law and two under federal law, based on allegations that defendant misappropriated trade secrets and accessed plaintiff's email system without authorization. As with plaintiff's other claims, all of the acts allegedly done by defendant that gave rise to these claims were done by defendant outside of Alaska. While the harm that plaintiff may have suffered as a result of these alleged acts may have been felt in Alaska, if such harm is not sufficient for a breach of contract or tort claim, it would not be sufficient, for venue purposes, for these statutory claims. Thus, venue in Alaska is not proper for plaintiff's statutory claims.

Because venue is improper in Alaska as to all of plaintiff's claims against defendant,[30] the court must decide whether to dismiss plaintiff's complaint or whether, "in the interest of justice" it should transfer plaintiff's complaint to a "district or division in which it could have been brought." 28 U.S.C. § 1406(a). It is within the court's discretion to dismiss or transfer. Martensen v. Koch, 942 F. Supp. 2d 983, 996 (N.D. Cal. 2013). "'[I]n most cases of improper venue the courts conclude that it is in the interest of justice to transfer to a proper forum rather than to dismiss the litigation.'" Bar T Timber, Inc. v. Pacific Fibre Products, Case No. CV–13–30–BLG–CSO, 2013 WL 5209962, at *7 (D. Mont. Sept. 13, 2013) (quoting Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3827). "This is because 'normally dismissal of an action that could be brought elsewhere is

---

[30]Because venue in Alaska is improper, the court need not consider defendant's alternative motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

time-consuming and justice-defeating.'" Id. (quoting Miller v. Hambrick, 905 F.2d 259, 262 (9th Cir. 1990)).

Defendant argues that a dismissal would be appropriate here.[31] But, because plaintiff agrees that the Southern District of New York "is a proper venue[,]"[32] it would be in the interest of justice to transfer this case rather than dismiss it.

## Conclusion

Defendant's Rule 12(b)(3) motion is granted in part because venue in Alaska is improper. Plaintiff's complaint, however, is not dismissed. Rather, this matter is transferred to the Southern District of New York.

DATED at Anchorage, Alaska, this 20th day of November, 2019.

/s/ H. Russel Holland
United States District Judge

---

[31] The other defendant in this matter has been voluntarily dismissed by plaintiff. Docket No. 29.

[32] Plaintiff's Response [etc.] at 14, Docket No. 31.